ARMSTRONG v. McCRACKEN et al.

No. 34019.   March 27, 1951.

*229 P. 2d 590.*

Paul Pugh, Oklahoma City, and Charles J. Mackres, Fort Wayne, Ind., for plaintiff in error.

J. Dawson Houk, Fairview, for defendant in error D. H. McCracken,

executor of the estate of J. O. McCracken, deceased.

HALLEY, J. Parties will be referred to as they appeared in the court below.

David S. Armstrong was the owner of the NW/4 of sec. 33-22N-9W in Major county, Oklahoma, and Ruth E. Armstrong was his wife. On March 22, 1928, David S. Armstrong and Ruth E. Armstrong conveyed the above described land to Louise Rose Coulter for valuable consideration, and the following reservation was made in the deed:

"The grantors herein hereby reserve unto themselves from this conveyance an undivided 1/16 interest in and to all oil and gas produced from the land above described, giving full power to the grantees to execute and deliver oil and gas mineral leases upon such land without the concurrence therein or signatures thereto of grantors and waiving all right to participate in any bonuses paid for or extension payments under such oil and gas lease or leases."

By virtue of further conveyances, the title to the land became vested in J. O. McCracken, subject to this reservation. J. O. McCracken has died, and the case has been revived as to him in the name of D. H. McCracken, executor of the estate of J. O. McCracken, deceased. David S. Armstrong made no appearance in the case, and no one questions that Ruth E. Armstrong owns a one-half interest in whatever was reserved in the deed executed on March 22, 1928. The Sinclair Prairie Oil Company held an oil and gas lease on the land in question. No testimony was offered by either Ruth E. Armstrong or J. O. McCracken as to the intentions of the parties at the time of the execution of this deed, and we will of necessity be governed by the language of the deed.

The grantors, David S. Armstrong and Ruth E. Armstrong, reserved unto themselves "an undivided 1/16 interest in and to all oil and gas produced from the land above described. . . ." They gave to the grantees full power to execute and deliver oil and gas mineral leases upon such land without their concurrence therein or their signatures thereto, and they waived all right to participate in any bonuses paid for or extension payments under such oil and gas lease or leases.

This court said in Myers v. Hines, 149 Okla. 232, 300 P. 309, which is quite similar to the case under consideration:

"Where A. executes warranty deed to B., which contains the following reservation: 'It is understood that all the above land is leased for oil. It is expressly understood that the undivided one-eighth interest is hereby reserved in and to all oil and gas produced from the 60 acres described', held, A. is entitled to one-eighth of the oil and gas thereafter produced from said lands, free and clear of cost to him."

There was oral testimony offered in that case, but nevertheless we think that the intention of the grantors in the case under consideration was quite plain that they were retaining 1/16th of all oil and gas produced from the land, regardless of by whom it was produced.

The case here is stronger for the plaintiff, one of the reservation holders, than was Gardner v. Jones, 198 Okla. 691, 181 P. 2d 838. In that case, Addie Gardner was conveying a mineral deed to her former husband, containing the following granting clause: "conveyed to James S. Gardner, grantee, an undivided 1/16th interest in and to all of the oil, gas and other minerals in, under, and that may hereafter be produced from the following described land (description)."

The second paragraph excluded the grantee from the right to participate in leasing the land.

The third paragraph provided that the grantee should receive an undivided 1/16th part of any and all oil, gas or other minerals that may be produced under and by virtue of an oil and gas lease then on the premises,

or by virtue of any renewal or extension thereof, or of any new lease that might be executed.

The fourth paragraph provided that the grantee should not receive any of the rentals nor any part of the money received for renewals or extensions or from new leases.

All of the foregoing was taken care of in the reservation in the case at bar in one sentence.

We said in the Gardner case:

"Under the plain and unambiguous language of the grant, defendants are entitled to receive an undivided 1/16th and no less, of any and all oil, gas or other minerals produced or to be produced from said land under any lease executed by any owner."

The Armstrongs retained only 1/16th of the oil and gas produced. They were to get nothing if oil and gas were not produced; but if they were produced, they were to get a full 1/16th and not 1/16th of one-eighth. It is clearly apparent that the Armstrongs did not intend to produce the oil and gas themselves and retained no right to contract with anyone else to produce it for them. They simply retained for themselves 1/16th of all oil and gas that might be produced. We think this view is strengthened by the fact that the grantors retained no claim to the rentals or bonus money, which clearly indicates that they were taking simply what the words of the reservation said.

The trial court took the view that this 1/16th interest which was retained by the Armstrongs was 1/16th of the 1/8th royalty interest, and unquestionably relied upon the case of Swearingen v. Oldham, 195 Okla. 532, 159 P. 2d 247, as authority for its judgment in the case. In our opinion the Swearingen case is distinguishable from this one, for in that case there was considerable oral testimony offered, especially that of the attorney to whom the deed was submitted, who testified that he told the parties to the deed that Mr. Swearingen would take 1/16th of 1/8th of the oil, as provided in the lease. The trial judge stated in that case that the attorney's testimony influenced him in arriving at his judgment. The reservation in the Swearingen case was of 1/16th of all oil and gas and other minerals *in and under the land,* and an owner of a mineral interest would know that it would be necessary to give up something to get production, while in the case at bar the grantors retained their right to the oil and gas that was produced, indicating that they did not intend to give up anything in order to have the land developed. We also think that Hinkle v. Gauntt, 201 Okla. 432, 206 P. 2d 1001, is distinguishable from the case at bar on the facts.

The judgment is reversed, with instructions to the lower court to enter judgment for Ruth E. Armstrong, fixing her interest at one-half of 1/16th of all oil and gas produced from the land in question.